TARTAK BROTHERS, INC., demandante y apelada, *v.*
SECRETARIO DE HACIENDA, demandado y apelante.

Número 12104.

*Sometido:* 29 de febrero de 1960. *Resuelto:* 12 de mayo de 1960.

*Hon. Secretario de Justicia Hiram R. Cancio (J. B. Fernández
Badillo, Ex-Secretario de Justicia y Oscar N. Souffront,
Procurador Auxiliar,* en el alegato), abogados del apelante;
*Celestino Iriarte, F. Fernández Cuyar y H. González Blanes,*
abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión
del Tribunal.

El Secretario de Hacienda notificó a la recurrida deficiencias en su contribución sobre ingresos para los años contributivos 1946 a 1951. Dichas deficiencias surgieron cuando al reajustar los inventarios de la recurrida el Secretario de Hacienda eliminó del costo de las mercaderías el importe de las primas del seguro marítimo pagadas a compañías de seguros no autorizadas para hacer negocios en Puerto Rico.

Recurrió la contribuyente ante el Tribunal Superior y

después de celebrarse un juicio en los méritos, dicho tribunal dictó sentencia anulando las referidas deficiencias.

Los hechos, según los encontró probados el tribunal sentenciador, demuestran lo siguiente:

" . . . . . De dicha evidencia se desprende, como hechos probados, que ella compra mercancía mediante órdenes que sitúa con los fabricantes o suplidores en Estados Unidos. Estos la embarcan y cuando llega, la demandante paga el importe de la misma y la recibe. Si la mercancía no llega, no la paga, y aquella que llega deteriorada no la recibe y se devuelve. En las facturas y giros que recibe la demandante con la mercancía se incluyen, en adición al costo en sí de la misma gastos de transportación terrestre y marítima y seguro, cosa corriente en estas operaciones. Fuera de lo anterior, la demandante no tiene intervención alguna en relación con la mercancía que recibe; ni exige ni contrata el seguro de la misma, y le resulta igual que la aseguren o no ya que ella la paga si la mercancía llega en estado satisfactorio y si no llega o si viene deteriorada, no la acepta ni la paga.

"De una de las facturas sometidas en evidencia marcada Exhibit 1 de la demandante y Exhibit A del demandado, y que se presentó como ilustrativa de la forma en que la demandante hace estas transacciones, aparece que se le facturó mercancía de Estados Unidos con un cargo de $19.29 por seguro, más otros cargos. Unido a dicha factura hay un certificado de seguro marítico de Home Insurance Co., New York, expresando que el 27 de marzo de 1951 esa compañía aseguró a la suplidora o embarcadora Jackson Manufacturing Co. por la cantidad de $6,430 sobre 136 cajas de muebles embarcados en el vapor Morning Light bajo conocimiento de embarque de 27 de marzo de 1951 desde Mobile, Alabama, hasta San Juan, Puerto Rico. Se certifica además que en caso de pérdida el seguro es pagadero a la orden de Jackson Manufacturing Co. a presentación del certificado de seguro. Unido a dicho certificado está el conocimiento correspondiente al referido embarque de 136 cajas de muebles. Hemos visto los certificados de seguro unidos a las facturas de otros embarques y todos son del mismo tenor, o sea, seguro obtenido por el suplidor o embarcador de la mercancía a su propio favor." (Págs. 6 y 7 del Legajo de Sentencia.)

Sostiene el Secretario recurrente que las primas del seguro marítimo no eran deducibles bajo las disposiciones de las secs. 33 y 17 (c) de la Ley de Contribuciones sobre Ingresos de 1924. Dichas secciones disponen:

"Sección 33.—Al computar el ingreso neto, en ningún caso se admitirá deducción alguna por concepto de las partidas especificadas en la sección 17."

"Sección 17.—   .     .     .     .     .     .     .

"(c) No se admitirá como deducible cantidad alguna pagada como premio, liquidación o gastos por seguro contra cualquier riesgo, accidente o catástrofe que haya sido pagada a una compañía de seguros, asociación de seguro, corredor o agente que no estuviere autorizado para hacer negocios en Puerto Rico."

(Adicionada por la Ley núm. 31, aprobada en 12 de abril de 1941, con efecto retroactivo al 1ro. de enero de 1940.)

En realidad no se trata, técnicamente hablando, de que la contribuyente haya reclamado las primas del seguro marítimo como una partida deducible de su ingreso neto.(1) Ella no podía solicitar tales deducciones. La razón es obvia. La contribuyente no fue parte en los contratos de seguro, ni éstos se otorgaron en beneficio suyo. Las mercaderías eran aseguradas por los vendedores o suplidores bien directamente o a través de su agente y el seguro, en caso de daño o pérdida de las mercaderías, no era pagadero a la contribuyente. La cuestión se limita más bien a determinar si la contribuyente hizo figurar correctamente en sus inventarios el costo de las mercaderías compradas a los fabricantes o suplidores de los Estados Unidos. Si los costos son in-

---

(1) De acuerdo con la sec. 28 (a) de la Ley, las corporaciones pagaban la contribución correspondiente sobre el montante del ingreso neto que excediera de los créditos provistos en la sec. 34, a saber: la cantidad recibida como intereses sobre obligaciones de los Estados Unidos que se hubieren incluido en el ingreso bruto a virtud de la sec. 31. Ni la sec. 34 ni otras secciones siguientes de la ley conceden el importe de las primas de seguro como crédito deducible del ingreso neto. De suerte que el pago de las primas de seguro no lo concede la ley como un crédito deducible del ingreso neto tributable.

correctos, por haberse incluido indebidamente como parte de los mismos, partidas no permitidas por la ley, entonces el ingreso neto tributable de la contribuyente sería mayor que el computado por ella, y como consecuencia, surgiría una deficiencia en su contribución sobre ingresos.

Bajo la sec. 32 (a) se permitía a las corporaciones deducir, al computar su ingreso neto, todos los gastos ordinarios y necesarios pagados o incurridos durante el año contributivo en la explotación de cualquier industria o negocio. Por otro lado la sec. 33 prohíbe que al computar su ingreso neto la corporación deduzca las partidas especificadas en la sec. 17, entre las cuales está la cantidad pagada por concepto de primas de seguro a unas compañías de seguros no autorizadas para hacer negocios en Puerto Rico.

Bajo estas disposiciones, si la contribuyente hubiera pagado primas para asegurar su mercadería contra cualquier riesgo, accidente o catástrofe, hubiera podido deducir al computar su ingreso neto, la cantidad pagada como prima a una compañía de seguros autorizada para hacer negocios en Puerto Rico, como un gasto ordinario y necesario pagado o incurrido en la explotación de su negocio. Véase Merten's *Law of Federal Income Taxation*, Vol. 4, secs. 25.101 y 25.104, págs. 219 y 225 y el art. 101 del Reglamento núm. 1 del Tesorero de Puerto Rico sobre la Ley de Contribuciones sobre Ingresos de 1924. Sin embargo, ese mismo gasto no era deducible del ingreso neto, si las primas se pagaban a una compañía de seguros no autorizadas a hacer negocios en Puerto Rico, por prohibirlo las secs. 33 y 17 de la ley, según regían entonces.[2]

El error del Secretario de Hacienda consiste en haber considerado que la contribuyente dedujo de su ingreso neto primas pagadas, para asegurar *su mercadería*, a compañías de seguros no autorizadas para hacer negocios en Puerto

---

[2] El apartado (c) de la sección 17 fue eliminada de la nueva Ley de Contribución sobre Ingresos de 1954.

Rico. La prueba incontrovertida demuestra que la contribuyente no tomaba posesión de la mercadería comprada a los suplidores en Estados Unidos, ni pasaba a ser dueña de ella, hasta tanto la misma llegaba a San Juan en buen estado, era aceptada por ella y pagaba su precio. Este precio incluía el costo en sí de la mercadería más los cargos por concepto de flete, seguro marítimo y comisión del agente de los vendedores o suplidores. Si la contribuyente no pagaba el precio así determinado, no adquiría la mercadería. (Véase el testimonio incontrovertido del tesorero de la corporación contribuyente que se une a esta opinión como Apéndice A.) De suerte que ese costo global era el precio real que la contribuyente pagó en San Juan por las mercaderías.

De acuerdo con la sec. 8 de la Ley de 1924, la contribuyente venía obligada a practicar inventarios sobre una base "tan aproximadamente como sea posible a la mejor práctica de contabilidad aplicable al comercio o negocio y que con mayor claridad refleje el ingreso".

Los inventarios de la recurrida reflejaban correctamente el costo de la mercadería. Por lo tanto, computó correctamente su ingreso neto. En su consecuencia las deficiencias notificadas a la contribuyente por el Secretario de Hacienda carecían de base legal.

*Debe confirmarse la sentencia dictada por el Tribunal Superior.*

El Juez Asociado Sr. Santana Becerra no intervino.

---

### Apéndice A
#### "DECLARACIÓN DEL SEÑOR EDUARDO TARTAK

"Demandante:

"P. ¿Su nombre?

"R. Eduardo Tartak.

"P. ¿A qué se dedica usted?

"R. Soy comerciante.

"P. ¿En forma corporativa o personalmente?

"R. Corporativa.

"P. ¿Qué corporación?

"R. Tartak Bros., Inc.

"P. ¿Usted tiene un puesto en la corporación?

"R. Sí señor, tesorero.

"P. ¿Desde cuándo?

"R. Desde que se fundó la organización en el año 1942.

"P. ¿Desde el año de 1946 al año de 1951, los años comprendidos aquí usted ha sido tesorero de la corporación todo el tiempo?

"R. Sí señor.

"P. ¿Cómo es que ustedes obtienen la mercancía que venden en Puerto Rico?

"R. Mediante órdenes que se le hacen a los suplidores.

"P. ¿Ustedes ponen la orden escrita?

"R. Sí señor, escrita.

"P. ¿Cómo obtienen la mercancía?

"R. Una vez puesta la orden al suplidor, ellos la embarcan y al llegar la mercancía aquí la pagamos si es la que ordenamos y si está en buen estado.

"P. ¿En relación con los gastos de transportación y seguro desde el suplidor hasta aquí en San Juan que es el domicilio de la corporación, quién paga los gastos?

"R. Nosotros.

"P. ¿Cómo los paga, ustedes tienen agentes en Estados Unidos?

"R. No.

"P. ¿Quién se encarga de la mercancía desde el suplidor hasta el domicilio?

"R. El mismo suplidor.

"P. ¿Ustedes reciben la mercancía y qué más?

"R. Vienen giros acompañando el conocimiento de embarque.

"Demandante:

"Mostrándole el exhibit núm. 1, aquí ustedes le hacen la orden a Jackson Manufacturing Co.

"P. ¿Quién obtuvo la orden?

"R. Del suplidor.

"P. ¿Ustedes tuvieron intervención en la obtención de la póliza de seguro?

"R. En ninguna forma.

"P. En esta póliza de seguro se cubren mercaderías desde Mobile, Alabama, hasta San Juan, Puerto Rico, si viene una pérdida en la mercancía ¿quién se encarga de hacer la reclamación?

"R. El fabricante.

"P. ¿Si hubiera una pérdida ustedes sufrirían la misma?

"R. No señor.

"P. ¿Quién sufre la pérdida?

"R. El suplidor.

"P. ¿Dice usted que de recibirse la mercancía en malas condiciones y distinta a la ordenada ustedes la rechazan?

"R. La rechazamos y la dejamos sobre el muelle.

"P. ¿Al dejarla sobre el muelle quién se hace cargo de ella?

"R. El suplidor se encarga de reclamar los daños o de subastarse a cualquier otro en las condiciones en que está.

"P. ¿Ustedes no tienen control sobre eso?

"R. No señor.

"P. ¿Tienen control sobre la designación de la Compañía de Seguro que cubre el riesgo desde el suplidor hasta llegar la mercancía a San Juan.

"R. Ningún control.

"P. ¿En alguna ocasión han tenido ustedes que tomar intervención?

"R. No.

"P. ¿En alguna ocasión han asegurado ustedes alguna parte de esa mercancía?

"R. No, tampoco.

"P. ¿Por qué?

"R. Porque el suplidor se encarga de hacer esos trámites.

"P. Me parece que usted dijo que originalmente ustedes pagaban todos esos gastos.

"R. Pagamos todo porque consideramos que todos estos gastos son costos de la mercadería.

"P. ¿En las facturas que ustedes reciben está incluido el seguro y flete de tierra?

"R. También.

"P. ¿Ustedes liquidan la mercancía aquí a base del total de las facturas?

"R. Del total del costo de la mercadería más seguro, flete marítimo y terrestre y el seguro.

"P. Tenga la bondad de decirle a la Corte si es discrecional u opcional el que se asegure o no la mercancía.

"R. A nosotros no nos hace falta asegurarla.

"P. ¿Es opcional de ustedes o no?

"R. No, es realmente el suplidor quien lo exige.

"Demandante:

"Nada más.

"Demandado:

"P. ¿Usted compra directamente a la fábrica?

"R. A la fábrica no, es mediante el agente de exportación.

"P. ¿Hassman & Bags a qué se dedica?

"R. Ese es el que prepara los documentos de embarques.

"P. ¿Ellos no tienen relación con la fábrica?

"R. No sé si tienen, solamente sé que los documentos vienen preparados por Hassman & Bags.

"P. ¿Usted no le compra a Hassman & Bags?

"R. No.

"P. ¿Sin embargo los documentos son preparados por Hassman & Bags?

"R. De algunos suplidores únicamente.

"P. ¿De otro suplidor quien los prepara?

"R. Hay muchos agentes.

"P. ¿Son agentes similares a Hassman & Bags?

"R. Si señor.

"P. ¿Ustedes le pagan a Hassman & Bags por ese servicio?

"R. Por la preparación de los documentos se le paga.

"P. ¿Ustedes pagan por la preparación de los documentos y encargarse de que le envíen a Puerto Rico la mercancía?

"R. Nosotros pagamos todo englobado, la mercancía y el flete.

"P. ¿Este certificado de póliza de seguro a favor de quién está hecho?

"R. A nombre de Hassman & Bags.

"P. ¿No es a favor de la fábrica?

"R. No, nosotros no nos fijamos en esto, lo que nos interesa es que diga puesto en San Juan para hacernos cargo de ella.

"Demandante:

"El testigo se está refiriendo a un grupo de facturas hechas por un mismo importador y nuestra contención es que Hassman & Bags son agentes de un mismo suplidor.

"Demandado:

"P. ¿Quién le paga a Hassman & Bags?

"R. El suplidor y el suplidor nos factura a nosotros tal como se ve ahí.

"P. ¿Por orden de quién?

"R. Por órdenes puestas por nosotros para la mercancía pero no para los gastos.

"P. ¿Las gestiones que hace Hassman & Bags quién las paga?

"R. En este caso fue el suplidor entonces nosotros le pagamos al suplidor.

"Señor Juez:

"¿Qué relación tiene Hassman & Bags con el suplidor?

"Demandante:

"Son los manipuladores de las exportaciones para ese exportador.

"Demandado:

"¿De la propia factura surge que hay otros que son exportadores. Pero la póliza de seguros se hace a nombre de Hassman & Bags que es el exportador independiente?

"Demandante:

"Hassman & Bags no son los importadores ellos son las personas que se encargan de coger la mercancía del ferrocarril, se ocupan desde allí llevarla al barco, asegurarla, pagar el costo del flete, el seguro, y le cargan la comisión al exportador por el trabajo de ellos. Se encargan de todo el papeleo.

"Demandado:

"P. ¿Esas son las facturas que aparecen ahí?

"R. Incluye la comisión de Hassman & Bags.

"P. ¿Cuál es el sistema de compra de su corporación?

"R. Compramos de distintas maneras.

"P. ¿Ustedes compran facturas F O B, New York?

"R. Si señor.

"P. ¿Ustedes hacen compras F O B Mobile?

"R. A cualquier puerto o cualquier fábrica, a Chicago, a dondequiera.

"P. ¿El sistema de compra de ustedes no es Cif?

"R. Muchas veces es Cif.

"P. ¿Otras veces es el sistema de F O B en el puerto de New York por la fábrica, ¿es correcto?

"R. Correcto.

"Señor Juez:

"En cuanto al seguro hay variación, o hay una situación distinta cuando compran bajo un sistema o bajo el otro?
"Testigo:

"No hay ninguna. El suplidor en una forma u otra tiene que asegurar su mercancía. Al suplidor decir doy mercancía C I F ellos estiman lo que le va a costar la mercancía hasta el puerto de aquí.

"P. ¿Y el seguro marítimo?

"R. Lo pagamos nosotros porque en cualquier forma hay que agregarlo al costo de la mercancía.

"P. Eso lo agregan ustedes aquí al costo de la mercancía pero no de la fábrica. ¿Ustedes compran a la fábrica directamente y la fábrica les manda F O B New York?

"R. Si señor.

"P. ¿Y por qué manda F O B New York?

"R. El F O B New York es que no tiene flete terrestre.

"P. ¿Que ellos no cargan el flete terrestre desde la fábrica hasta el puerto de Nueva York?

"R. No señor, no hay que pagar ese flete.

"P. ¿Qué pasa después?

"R. Una vez está en el puerto, lo que resta de gasto adicional es el flete marítimo o el seguro marítimo.

"P. ¿En ambos casos hay seguro?

"R. Siempre tiene que haber seguro.

"Demandado:

"P. ¿Cuando la mercancía se la envían a usted F O B New York, a la fábrica entregar la mercancía en el puerto de Nueva York cesa su responsabilidad con la mercancía?

"R. No, tiene que llegar aquí la mercancía para nosotros aceptarla y pagarla.

"Señor Juez:

"¿En todas las operaciones que puedan estar envueltas en este litigio, en algún momento ustedes pagaron esa mercancía en New York o cuando llega a Puerto Rico?

"R. Siempre cuando llega a Puerto Rico.

"P. ¿Me refiero a todas las operaciones específicas, algunas de ellas se pagaron en Nueva York o en otro sitio fuera de San Juan?

"R. Siempre en San Juan.

"Demandado:

"P. ¿Una mercancía F O B puerto de Nueva York, quién se hace cargo de la mercancía cuando la mercancía es entregada en el puerto de Nueva York?

"R. El agente al hacer el embarque del suplidor que se encuentra en algún puerto. El 'forwarding agent'.

"P. ¿Ese 'fordwarding agent' es un agente suyo?

"R. No, es del suplidor." (Récord taquigráfico, páginas 5–14.)